UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

EDWARD COBURN,

                       Plaintiff,                          **DECISION AND ORDER**

v.                                               **07-CV-0029 (VEB)**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                       Defendant,

# I.
# INTRODUCTION

     Plaintiff Edward Coburn brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). Specifically, Plaintiff moves for judgment on the pleadings alleging that the decision of the Administrative Law Judge ("ALJ") denying his applications for benefits was not supported by substantial evidence and was contrary to the applicable legal standards. The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) ("Rule 12(c)"), arguing that the ALJ's decision was supported by substantial evidence and made in accordance with the correct legal standards.

     For the reasons that follow, the Court finds the Commissioner's decision is supported by substantial evidence and determined in accordance with the applicable law. Thus, the Court affirms the decision of the commissioner.

# II.

## BACKGROUND

On October 1, 2003, Plaintiff filed an application for SSI and DIB, alleging disability beginning August 24, 2003.  (R. at 69-73, 524-527).[1]   The claims were denied initially on June 16, 2004 and upon reconsideration on August 31, 2004.  (R. at 50-53, 56-58, 529-533, 534-536). Thereafter, Plaintiff filed a timely written request for a hearing on September 13, 2004.  (R. at 59).

Plaintiff and his counsel appeared  before Administrative Law Judge James D. Kemper, Jr. on December 22, 2005 and at a supplemental hearing on May 17, 2006.  (R. at 539-578).  At the administrative hearings, Plaintiff testified that his problems arose several years prior as a result of a vehicle accident.  (R. at 547).  Plaintiff testified that he sustained further injuries after he fell from a ladder.  (R. at 547).  At the time of the administrative hearings, Plaintiff testified that he suffered from bilateral knee, shoulder, elbow and back pain, recurring prostatitis, and difficulty sleeping and concentrating.  (R. at 542,543-33, 547-48, 550-50, 562-63).

The ALJ considered the case *de novo* and, on July 25, 2006, issued a decision finding Plaintiff was not disabled.  (R. at 12-28).  The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on November 17, 2006. (R. at 6-8).  Plaintiff filed this action on March 23, 2007.

## III.  DISCUSSION

---

[1] Citations to the underlying administrative record are designated as "R."

**A. Legal Standard and Scope of Review**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990).  Instead, the Commissioner's determination will only be reversed if incorrect legal standards were applied, or if the determination was not supported by substantial evidence.  Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

 "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" however, it is evidence which amounts to "more than a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1979).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See* Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982)

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

The Commissioner's finding, if supported by substantial evidence, must be sustained even if there is substantial evidence to support the Plaintiff's position or despite the reviewing

court's independent analysis of the evidence which may differ from the Commissioner's. Rosado v. Sullivan, 805 F.Supp.147, 153 (S.D.N.Y. 1992); See Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Barnett v. Apfel, 13 F.Supp.2d 312, 314 (N.D.N.Y. 1998).  Thus, this Court must give the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established the following five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).[2]  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.E.d.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

The claimant has the burden of proving the first four steps; however, the burden shifts to the Commissioner on the fifth and final step.  *See* Bowen v. Yuckert, 482 U.S. 137, 146 n. 5;

---

[2]This five-step process is detailed below:

   First, the [Commissioner] must consider whether the claimant is currently engaged in substantial gainful employment.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  However, if the claimant does not have a listed impairment, the forth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] must determine whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982)(per curiam); *see also* Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 404.1520(a), 416.920(a).

Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).  The final step of the inquiry is, in turn, divided into two parts: (1) the Commissioner must first assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience; and (2) the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed. 2d 66 (1983).

**B.  Analysis**

Based on the entire record, because the ALJ applied the proper legal standards and his decision is supported by substantial evidence, the Court recommends the Commissioner's decision be upheld.

**1.   The Commissioner's Decision**

The ALJ followed the sequential analysis and concluded that Plaintiff was not disabled within the meaning of the Act.  (R. at 14-28).  The ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  (R. at 16).  The ALJ determined that Plaintiff had the following severe impairments: "musculoskeletal strain/sprain injuries, osteoarthritis of the lower lumbar spine, left knee, and right ankle; status post right elbow surgery, labral tears of both shoulders, left greater than right, with evidence of impingement syndrome of the left shoulder and a partial tear of the right rotator cuff, obesity, history of cannabis abuse , and depressive disorder."  (R. at 16).  However, the ALJ concluded that Plaintiff's severe impairments did not, individually or in combination meet a Listing.  (R. at 18).  The ALJ found that Plaintiff had the residual functional capacity ("RFC") "limited to light

exertional activity which involve[d] lifting and/or carrying of up to but no more than twenty (20) pounds maximum occasionally and ten (10) pounds maximum frequently, . . . [l]imited to no more than occasional climbing, stooping, kneeling, crouching, and crawling, and should engage in no more than occasional reaching above shoulder level; [and,] . . . 'moderately' limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace within an unreasonable number and length of rest periods as well as in his ability to respond appropriately to changes in the work setting, yet he retains the basic mental capacity to perform simple, low stress jobs."  (R. at 20). However, the ALJ concluded that Plaintiff was unable to perform any of his past relevant work (mechanic, medium to heavy exertional skilled work and truck driver, up to heavy exertional semi-skilled work.)  (R. at 26).

Nevertheless, the ALJ found that Plaintiff had the ability to perform other work.  (R. at 26).  The ALJ reached this conclusion by finding that there are jobs that exist in significant numbers in the national economy that the claimant could perform considering his age, education, work experience, and residual functional capacity.  (R. at 26).  In fact, the ALJ considered that Plaintiff had at least a high school education, was able to communicate in English, and was 40 years old at the time the ALJ issued his decision which is considered a "younger individual" as defined in the regulations.  (R. at 26).  The ALJ also considered the vocational expert's testimony regarding the availability of jobs in the national economy for an individual's age, education, work experience, and residual functional capacity.  (R. at 26).

Based on the foregoing, the ALJ concluded that Plaintiff was not disabled.  (R. at 27).

**2.  Plaintiff's Claims**

Plaintiff argues (a) the ALJ failed to properly consider the opinions of the treating physicians; (b) the ALJ erroneously rejected Plaintiff's testimony regarding Plaintiff's subjective allegations of pain and limitations; (c)  the ALJ failed to properly assess Plaintiff's residual functional capacity; and (d) the ALJ failed to consider the effects of Plaintiff's obesity at all steps in the sequential evaluation process, and his failure to consider those effects on the severity of his physical impairments and his ability to perform basic work activities was error.

### a.  Treating Physicians' Opinions

Plaintiff argues that the opinions of the treating physicians were entitled to controlling weight because they were supported by objective medical evidence.  (Plaintiff's Brief, p. 11-12).

The treating physician rule requires an ALJ to give controlling weight to a "treating source's opinion[s] on the issue(s) of the nature and severity of a [a claimant's] impairment(s)" if the opinions are well supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence."  20 C.F.R. § 404.1527(d)(2); *see also* <u>Rosa v. Callahan</u>, 168 F.3d 72, 78-79 (2d Cir.1999).  Even if an ALJ does not grant controlling weight to the treating physicians' opinions, "he will always give good reasons . . . for the weight [he] give[s] [a] treating source's opinion."20 C.F.R. § 404.1527(d)(2). In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of opinion; (4) consistency; (5) specialization of the treating physician; and (6) other factors that are brought to the attention of the court.  C.F.R. § 404.1527(d)(1)-(6); *see also* <u>de Roman</u>, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y.

July 2, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998).

In this case, Plaintiff argues that controlling weight should have been given to Dr. Goodwin's opinion regarding a determination of disability. (Plaintiff's Brief, p. 11) Plaintiff further argues that the ALJ's rejection of the treating physician's opinions concerning Plaintiff's limited capacity to sit, stand, walk, bend, squat, crawl, climb and capacity to work is reversible error because those opinions are supported by objectively verifiable evidence. (Plaintiff's Brief, p. 11-12).

Dr. Goodwin, one of Plaintiff's treating physicians, noted his opinion that Plaintiff "definitely qualifies for disability" and that "he is definitely disabled from any type of work, even sitting would be a problem." (R. 385, 386) While the ALJ noted this opinion by Dr. Goodwin, the ALJ also properly considered that the ultimate decision of disability is one reserved to the Commissioner of Social Security. (R. at 24). *See* 20 C.F.R. § 404.1527(e); SSR 96-5p (The issue of "disability" under the Act is not a medical issue to be decided by a treating source, but an administrative finding reserved to the Commissioner.) A statement by a treating physician that an individual is disabled is not, by itself, controlling. The ALJ is thus not obligated to accept the assessment of one of Plaintiff's treating physicians that Plaintiff is disabled. *See* 20 C.F.R. § 404.1527(e)(1); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). Furthermore, the ALJ noted that aside from Dr. Goodwin's statement that "sitting would be a problem," Dr. Goodwin did not make any specific reference to work-related limitations. (R. at 24). Thus, Dr. Goodwin's opinion regarding a determination of disability was not entitled to controlling weight.

With regards to Dr. Goodwin's medical findings, there is no evidence in the record to suggest that the ALJ did not consider Dr. Goodwin's medical opinions and afford those opinions with controlling weight as Plaintiff suggests.  In fact, the ALJ noted Dr. Goodwin's findings that arthroscopic surgery revealed severe osteoarthritis of the right shoulder as well as anterior labral tear subluxation requiring additional repair.  (R. at 24).  While the ALJ did not state the specific weight that he afforded to Dr. Goodwin's findings, he nevertheless considered said findings when determining Plaintiff's RFC.  In fact, the ALJ sets forth that he accounted for these findings regarding Plaintiff's shoulder impairment when he determined Plaintiff's physical restrictions. (R. at 24).  The ALJ also noted Dr. Goodwin's evaluation of Plaintiff's left knee complaints which showed an essentially negative left knee x-ray with full range of motion of the affected knee and no evidence of instability.  (R. at 24, 387)

Plaintiff also argues that the Commissioner rejected the treating physician's opinion regarding Plaintiff's "very limited" physical capacity to sit, stand, walk, bend, squat, crawl, climb, etc.; however, Plaintiff does not specify which treating physician's opinion the ALJ allegedly rejected.  (Plaintiff's Brief, p. 11-12)  In fact, Plaintiff had several treating physicians in this case.  Dr. Mamlouk, Plaintiff's initial treating physician, found that Plaintiff had a full range of motion of the bilateral shoulders and of both the cervical and lumbar spine; however, he did not impose any work-related restrictions.  (R. at 384).  Dr. Bocado, one of Plaintiff's treating physicians at Hope Family Medical Center submitted records reflecting  findings that Plaintiff was able to walk on the tip of his toes and on his heels with no edema. (R. at 380).  Dr. Martonffy, Plaintiff's treating neurologist, found in his neurosurgical evaluation intact sensation and deep tendon reflexes in Plaintiff's upper and lower extremities; his musculoskeletal

examination revealed atrophy in Plaintiff's neck, but normal range of motion; his examination of

Plaintiff's thoracolumbar spine showed no tenderness, normal range of motion, and no spasm;

and his examination of Plaintiff's right upper extremities revealed a positive Spurling's test[3] on

the right but negative on the left. (R. at 419-421). Dr. Furcolow, Plaintiff's rheumatologist

between March and August 2005, performed examinations which revealed negative straight leg

raising tests,[4] normal upper extremity reflexes, and no evidence of active synovitis, except for

mild soft tissue swelling in the hands and knees; however, Dr. Furcolow did not express any

professional concerns regarding Plaintiff's ability to engage in work-related activities. (R. at

493, 496).

Likewise, Dr. Deitch, Plaintiff's neurologist, did not render an opinion as to Plaintiff's

work-related capabilities but did provide clinical records which revealed normal neurological

examinations. (R. at 241-245). Dr. Koenigsmark, Plaintiff's consultative examiner, found that

Plaintiff's ability to sit, stand, and move were unimpaired; however, he felt that Plaintiff's ability

to lift, carry, and handle objects may be somewhat impaired on the basis of shoulder pain. (R. at

200). Nevertheless, Dr. Koenigsmark opined that Plaintiff would only require a minimal

decrease in the amount of weight he could carry in proportion to his size. (R. at 200). Dr.

Koenigsmark also noted that Plaintiff's gait/station was normal, there was no evidence of motor

---

[3] Evaluation for cervical nerve root impingement in which the patient extends the neck and rotates and laterally bends the head toward the symptomatic side; an axial compression force is then applied by the examiner through the top of the patient's head; the test is considered positive when the maneuver elicits the typical radicular arm pain. Stedman's Medical Dictionary, 27th Edition.

[4] The straight leg raise test ("SLR") is used to detect nerve root pressure, tension or irritation. A positive SLR requires the reproduction of pain at an elevation of less than 60 degrees. A positive SLR is said to be the most important indication of nerve root pressure. Andersson and McNeill, Lumbar Spine Syndromes, 78-79 (Springer-Verlag Wein, 1989).

changes or sensory or reflex abnormality, Plaintiff did not require an assistance device for ambulation, Plaintiff's manipulation and strength were good, he had no edema and muscle tone and bulk in the lower extremities was normal for his age. (R. at 200). Finally, Dr. Koenigsmark found that straight leg raise testing was negative in both the sitting and supine positions, there was no evidence of paraspinal tenderness or muscle spasm, claimant was able to perform a knee squat, but his ability to raise his shoulders was "slightly" decreased. (R. at 199). The ALJ considered all of the aforementioned opinions as set forth in his decision.

The only physicians' opinions that the ALJ afforded less weight were Dr. Simpson and Dr. Arnett. First, Dr. Simpson is Plaintiff's chiropractor and is not an acceptable medical source; therefore, his opinion that Plaintiff was "disabled" is not entitled to any special weight. 20 C.F.R. §§ 404.1513, 416.913; *see* Diaz v. Shalala, 59 F.3d 307, 313 (2d Cir.1995). Nevertheless, the ALJ did consider chiropractic records which showed some progress. (R. at 23). The ALJ also afforded less weight to the independent medical opinion of Dr. Arnett, finding that Dr. Askin's more recent opinion was more persuasive. (R. at 24) The Court finds that the ALJ's decision in this regard was supported by substantial evidence. First, Dr. Arnett opined that Plaintiff would be limited to sedentary exertional lifting and in essence, would be unable to meet the sitting/standing/walking requirements of a full eight-hour workday; however, his opinions are not supported by clinical findings in the record. Second, Dr. Arnett's opinions are contradicted by Dr. Hernandez and Dr. Askin's opinions with regards to Plaintiff's abilities to stand, walk, and sit. Dr. Hernandez opined that Plaintiff could walk, sit and stand about 6 hours in an 8-hour workday. (R. at 202). Further, the ALJ is entitled to give great weight to the expert medical opinion of Dr. Askin who reviewed Plaintiff's medical records and concluded Plaintiff

was limited to lifting and carrying up to twenty (20) pounds on occasion and up to ten (10)

pounds frequently, that Plaintiff did not have limitations in sitting, standing, or walking and that

Plaintiff would be limited in reaching higher than shoulder level. (R. at 520-522).  It is well-

settled that an ALJ may rely upon the opinions of the state agency's medical and psychological

consultants, since they are deemed to be qualified experts in the field of Social Security

disability.  See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6),

416.913(c), and 416.927(f)(2).  Moreover, the opinion of a non-examining consultant may

constitute substantial evidence in support of the ALJ's determination where, as in this matter,

other evidence in the record supports it.  See Diaz v. Shalala, 59 F.3d 307, 313 n. 5 (2d Cir.

1995); Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993).

In light of the foregoing, the ALJ's weighing of the opinions of Plaintiff's treating

physicians was in accord with applicable law and supported by substantial evidence.

### b.  Assessment of Plaintiff's Credibility

Plaintiff argues that the ALJ improperly rejected claimant's subjective description of pain

and limitations and failed to acknowledge evidence of his limited daily activities that

demonstrate he is disabled. (Plaintiff's Brief, pp. 9-11)

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is

supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49,

56 (2d Cir. 1992)(citations omitted).  "However, the ALJ is 'not obliged to accept without

question the credibility of such subjective evidence.'" Martone v. Apfel, 70 F.Supp.2d 145, 151

(N.D.N.Y.1999)(quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979)).  When rejecting

subjective complaints, an ALJ must do so "explicitly and with sufficient specificity to enable the

Court to decide whether there are legitimate reasons for the ALJ's disbelief." Brandon v. Bowen, 666 F.Supp. 604, 608 (S.D.N.Y. 1987). If the ALJ's findings are supported by substantial evidence, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints [of pain]." Aponte v. Sec'y of Dept. of Health & Human Servs., 728 F.2d 588, 591 (2d Cir.1984).

In this case, Plaintiff testified that his knees were "gone," his shoulders were "shot," and his back was "junk." (R. at 542). Plaintiff testified that his legs go numb and that he can stand for less than thirty (30) minutes. (R. at 543). Surgical intervention of Plaintiff's shoulder was reportedly unsuccessful and he must be careful in lifting and he is unable to engage in overhead activity. (R. at 544). Plaintiff reported having "massive" amounts of pain with weather changes. (R. at 545). Plaintiff took Ultram for pain control, noting that he was unable to afford Celebrex, and indicated that his daughter was "stealing" his heavier pain medications. (R. at 545-546). Plaintiff reportedly rated his pain as a six (6) out of seven (7) on a pain scale of one (1) to ten (10). (R. at 546). Plaintiff stated he had middle back problems and prostate problems which made it painful to urinate and difficult for him to sit. (R. at 548-549). He also noted his joints were becoming more and more painful, but indicated that pain medication made his pain bearable. (R. at 567). Plaintiff reported having difficulty dealing with the pain and that he had a decreased concentration and poor memory. (R. at 551). Plaintiff also alleged that he could lift a gallon of milk and/or his eleven pound dog. (R. at 552). Plaintiff stated that he was limited to walking fifteen to twenty (15-20) minutes, and could only walk a distance of about fifty (50) feet. Plaintiff testified to using a cane to keep weight off his left knee. Finally, he noted side effects of medication included sleeplessness and visual disturbances (seeing spots). (R. at 567).

The "ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record." Borush v. Astrue, 2008 WL 4186510, at *12 (N.D.N.Y. Sept.10, 2008)(citations omitted). The first step is to determine whether the claimant has medically determinable impairments, "which could reasonable be expected to produce the pain or other symptoms alleged." 20 C.F.R. §404.1529(a);S.S.R. 96-7p, 1996 WL 374186, at *2; see also McCarty v. Astrue, 2008 WL 3884357, at *8 (N.D.N.Y.Aug. 18, 2008)(citing S.S.R. 96-7p, 1996 WL 374186) ("This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms. If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities.").

The second step of a credibility analysis requires the ALJ to evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. S.S.R. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. §404.1529(c); Borush, 2008 WL 4186510, at *12. The ALJ will consider whether objective medical evidence supports the intensity and persistence of alleged symptoms. 20 C.F.R. §404.1529(c)(2). However, because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; (7) any other

14

factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§416.929(c)(3)(I)-(vii).

In this case, the ALJ concluded found that Plaintiff's medically determinable impairments

could reasonably be expected to produce the alleged symptoms; however, the ALJ found that Plaintiff's statements regarding the intensity, persistence and limiting effects of the symptoms were not entirely credible.  (R. at 21).  The ALJ cited the medical evidence and Plaintiff's testimony concerning his activities of daily living in support of his decision to afford full credibility to Plaintiff's subjective complaints of disabling pain.  Specifically, the ALJ considered Plaintiff's statements that he is in severe pain and that he is unable to sit for extended periods; however, he was able to endure a round-trip car ride as a passenger to Albany, New York from Kentucky, a distance of about 800 miles with a drive time of between 16-18 hours taken over two days at an average of 400 miles per day.   Although Plaintiff claims to have totally debilitating impairment, the ALJ considered that Plaintiff has had limited conservative treatment overall, and has not, to date, sought formal treatment for psychiatric distress.  The ALJ also noted that Plaintiff admitted that pain medication was effective in making his pain tolerable.   The ALJ found Plaintiff's "presentation" to be "somewhat exaggerated," apparently referring to Plaintiff's demeanor, statements, descriptions and testimony.  Further, the ALJ considered the fact that Plaintiff was not always compliant with his treating physicians' recommendations.  As an example, the ALJ noted that Plaintiff was repeatedly advised and encouraged to stop smoking and that Plaintiff declined to undergo shoulder injections as suggested by Dr. Martonffy. Finally, the ALJ considered that "Plaintiff reported to treating physicians that he engaged in

15

activities that would be inconsistent with the degree of pain and functional limitation he described, such as mowing the grass, doing laundry, walking, carrying groceries, etc."  This Court also notes that the record is replete with other activities that the ALJ may have considered to be inconsistent with Plaintiff's testimony including walking in his yard, washing his car, grocery shopping, babysitting his granddaughter, bending over to pick up his small eleven-pound dog, driving, and performing housework such as vacuuming, washing dishes, preparing small meals, and taking care of personal needs.  Based on the aforementioned, the ALJ did not "afford full credibility" to Plaintiff's subjective statements.

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."  Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted).  If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain."  Aponte v. Sec'y Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984)(citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference.  *See* Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999)(citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985); *see also* Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

The Court finds that the ALJ exercised his discretion in this case to evaluate the credibility of Plaintiff's testimony, presented a fair summary of his evaluation, and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence.  *See e.g.* Mimms v. Sec'y of Health and Human Servs.,

750 F.2d 180, 196 (2d Cir. 1984). While Plaintiff argues that the ALJ erroneously rejected the claimant's description of the 'intensity, persistence and limiting of facts of his symptoms'" based on the findings of two Agency Medical Examiner's, Dr. Balagtas and Dr. Puri, this Court notes that there are no medical reports or notes by Agency Medical Examiners by the names of Drs. Balagtas or Dr. Puri in the record. The Court further notes that the record is devoid of any individuals by the names of Drs. Balagtas, Puri, Staunton and Mr. Jones as set forth in Plaintiff's brief, which names were obviously carried over from the contents of a brief on an unrelated case. (Plaintiff's Brief, p. 9)

### c.    Plaintiff's Residual Functional Capacity

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means eight (8) hours a day, for five (5) days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).

The ALJ found that Plaintiff had the residual functional capacity ("RFC") "limited to light exertional activity which involve[d] lifting and/or carrying of up to but no more than twenty (20) pounds maximum occasionally and ten (10) pounds maximum frequently, . . . [l]imited to

17

no more than occasional climbing, stooping, kneeling, crouching, and crawling, and should

engage in no more than occasional reaching above shoulder level; [and,] . . . 'moderately' limited

in the ability to complete a normal workday and workweek without interruptions from

psychologically based symptoms and to perform at a consistent pace within an unreasonable

number and length of rest periods as well as in his ability to respond appropriately to changes in

the work setting, yet he retains the basic mental capacity to perform simple, low stress jobs." (R.

at 20).  Plaintiff argues that this RFC determination is not supported by substantial evidence

because the ALJ improperly failed to grant controlling weight to the opinions of Plaintiff's

treating physicians.  Plaintiff further argues that the flaws in the RFC led the ALJ to improperly

rely upon the testimony of the VE and Medical Vocational Guideline Rules.

 The Court finds that the ALJ's assessment of Plaintiff's mental RFC is supported by

substantial evidence in the record.  As stated above, the ALJ's determination of Plaintiff's

physical limitations is supported by the expert medical opinion of Dr. Askin.  There is no

evidence in the court record that Dr. Askin did not review the entire medical record; in fact, Dr.

Askin was asked by the ALJ to review the entire file (R. at 517) and he refers to the magnetic

resonance imaging (MRI) findings within the record to make determinations regarding Plaintiff's

ability to reach and use his arms above shoulder length.  (R. at 518-522).  Plaintiff's October

2003 MRI  revealed a "very discrete" reduction in height of the L1 and L2 vertebral bodies with

evidence of degenerative spondylosis, normal height remaining vertebral bodies without recent

fractures or dislocations.  The cervical MRI from October 2003 also revealed incomplete spinal

fusion processes of C6, but normal appearance of interspaces and no abnormality of the

precervical soft tissue, the pedicles, or the rest of the posterior elements.  The MRI of Plaintiff's

shoulders from April 2004, revealed labral tears and evidence of left shoulder impingement syndrome, but the right shoulder x-ray was normal.  The nerve conduction study and electromyograph conducted in February 2004, as well as the electroencephalographic conducted in April 2004 were all normal.  The April 2004 MRI study of Plaintiff's thoracic spine was unremarkable.   Considering the MRI studies, Dr. Askin stressed that the same terminology could/should be interpreted on an age-comparable basis, given that by 40 years of age, one-half the population will have rotator cuff tears, and the mention of such a finding should routinely state that the condition "may be age appropriate."  (R. at 519). It was, therefore, reasonable for the ALJ to rely on the opinion of this medical expert.

Further, the ALJ's physical RFC assessment is also supported by the objective medical opinions of Dr. Koenigsmark, as well as the treating source notes of Dr. Deitch, Dr. Martonffy and Dr. Furcolow as discussed in detail above.  Finally, the ALJ's physical RFC that Plaintiff could perform a range of light work is also supported by Dr. Carlos Hernandez, the State agency medical consultant, who reviewed the medical evidence and concluded that plaintiff could perform medium work activity.[5] (R. at 201-210).

With regard to Plaintiff's mental RFC, the ALJ reasonably relied on the State agency medical consultants, Dr. Ann Demaree and Dr. Ilze Sillers.  After reviewing the administrative record, Dr. Demaree and Dr. Sillers both found that Plaintiff was only moderately limited in his ability to complete  a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.  Dr. Demaree also concluded that Plaintiff was only moderately limited in his

---

[5] If Plaintiff can perform medium work activity, then Plaintiff can also perform a light range of activity.

ability to respond appropriately to changes in work setting; likewise, Dr. Sillers concluded that Plaintiff was only moderately limited in responding appropriately to changes in a work setting. Dr. Demaree further concluded that Plaintiff suffered only mild limitations in daily living and mild difficulties maintaining social functioning. Further, Dr. Demaree noted that there were no episodes of decompensation, and that Plaintiff was not receiving treatment or taking medication for his alleged disorder.

As noted above, it is well settled law that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1527(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel.Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004)("State agency physicians are qualified as experts in evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."). As the ALJ is entitled to rely on the opinions of Dr. Demaree and Dr. Sillers, this Court finds that there is substantial evidence to support the ALJ's assessment of Plaintiff's mental RFC.

The ALJ's determination of Plaintiff's mental RFC is also supported by Dr. Crotty's psychological evaluation. Although Dr. Crotty did not provide an opinion with regards to Plaintiff's work-related mental capabilities, Dr. Crotty did describe Plaintiff as talkative and cooperative, able to make good eye contact, to exhibit a range of affect appropriate to the content of conversation, to be alert and have though processes that were logical and coherent.

The ALJ also considered the evaluation of the consulting examiner and psychologist, Dr. Carney, who concluded that Plaintiff had no difficulties in understanding and following instructions, sustaining attention to repetitive tasks, and relating with others.  Dr. Carney's clinical findings also suggest that Plaintiff is oriented in all spheres, that Plaintiff described depression but his mood was not depressed during the interview, that Plaintiff functioned in the average to slightly above average range of overall intellectual ability, his alertness, attention and concentration were within normal limits, and his short and long term memory was intact.  Dr. Carney further noted that Plaintiff appeared to be "appropriately social, friendly, and cooperative."  While Dr. Carney also noted that Plaintiff has somatic distraction, is cognitively and emotionally distressed, would likely be uncomfortable in social situations, would have difficulty relaxing or making decisions, is likely to become agitated and distracted and would have reduced coping skills, the ALJ concluded that this assessment appeared to overly rely upon Plaintiff's subjective reports, as the mental status findings and observations detailed within Dr. Carney's evaluation did not support those findings.  Thus, the ALJ determined that the weight of the evidence as a whole was indicative of the Plaintiff having the ability to perform low stress jobs.

Based on the foregoing, this Court finds that the ALJ's RFC assessment is supported by substantial evidence and thus the ALJ was proper in relying of the vocational expert's opinions regarding Plaintiff's ability to perform other work existing in the national economy as set forth in the record.

### d.  Plaintiff's Obesity

Plaintiff argues that the ALJ was required to consider the effects of Plaintiff's obesity at

all steps in the sequential evaluation process and that the failure to consider said effects on the

severity of his physical impairments and his ability to perform basic work activities was in error.

(Plaintiff's Brief, pp. 11)

       The ALJ is required to consider only those impairments that Plaintiff claimed to have, or

about which the ALJ received evidence.  See <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 552-553 (3d

Cir. 2005), citing <u>Skarbek v. Barnhart</u>, 390 F.3d 500, 504 (7th Cir. 2004); <u>see also</u> 20 C.F.R.

404.1512(a). (". . .a remand is not required here because it would not affect the outcome of the

case. Rutherford never mentioned obesity as a condition that contributed to her inability to work,

even when asked directly by the ALJ to describe her impairments. So even if we assume – in

accordance with common sense – that the administrative record evidence of Rutherford's 5' 2"

height and her weight of some 245 pounds sufficed to alert the ALJ that obesity could be a

factor, Rutherford has not specified how that factor would affect the five-step analysis

undertaken by the ALJ, beyond an assertion that her weight makes it more difficult for her to

stand, walk, and manipulate her hands and fingers.") <u>Id</u>. at 553.

       In this case, Plaintiff did not list obesity in his application for disability benefits, or in his

request for a hearing before an ALJ.  In fact, Plaintiff never stated that his obesity was an

impairment.  During his hearing, Plaintiff disclosed his height and weight when questioned by

the ALJ, but did not assert that his weight aggravated his conditions.  While reports of Plaintiff's

height and weight within his medical evidence put the ALJ on notice that Plaintiff was obese, no

further information was contained in the medical evidence provided by either Plaintiff or his

doctors that suggest his weight contributed significantly to his symptoms.  For example, in Dr.

Tanwani's initial rheumatology clinical note on March 10, 2005, he documents Plaintiff's

statement that he gained 100 pounds over the last 18 months because he did not exercise. However, during Dr. Tanwani's follow-up rheumatology clinical examination, he notes that Plaintiff's "weight today is 302 pounds, stable weight for him.  During Dr. Martonffy's discussion of the different options and risk/benefits and surgical and nonsurgical options, he mentioned conservative treatment options such home exercises, physical therapy, occupational therapy, chiropractic therapy, vocational rehabilitation, lifestyle issues including but not limited to weight loss, tobacco abuse, alcohol abuse, drug abuse and pain management/medicine; however, Dr. Martonffy did not recommend a weight loss program in his treatment plan. Finally, Dr. Askin noted that Plaintiff's obesity would occasionally effect his postural activities such as climbing, stooping, kneeling, crouching, and crawling.  Dr. Askin also noted that Plaintiff's obesity would limit his ability to lift and carry objects of up to but no more than twenty (20) pounds maximum occasionally and ten (10) pounds maximum frequently.  While the ALJ noted that there was no "indication that the Plaintiff has actively participated in an aggressive weight loss reduction program to reduce the effects his body habitus has upon the remainder of his physical conditions," the ALJ did adopt Dr. Askin's findings regarding Plaintiff's limitations in performing postural activities as well as the limitations in carrying and lifting.

Thus, it can be logically inferred that while the ALJ did not explicitly consider Plaintiff's obesity as part of his decision, it was factored indirectly into his decision taken from the doctors' opinions and other evidence contained in the record. See Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004). ("Notably, Skarbek does not specify how his obesity further impaired his ability to work, but speculates merely that his weight makes it more difficult for him to stand and walk.

Additionally, the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity. Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions.") Id.

Therefore, the Court finds the ALJ did not err when he assessed Plaintiff's impairments without an explicit consideration of his obesity because he implicitly factored it into his decision taken from the doctors' decisions and other evidence in the record.

## IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision, including the objective evidence and supported opinions.  It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the evidence, and granted the witness testimony appropriate weight when rendering his decision that Plaintiff is not disabled.  The Court finds no reversible error.  Because the Court further finds that substantial evidence supports the ALJ's decision, it is ordered that the Defendant's Motion for Judgment on the Pleadings is GRANTED, that Plaintiff's Motion for Judgment on the Pleadings is DENIED, and that the decision of the Commissioner is affirmed.

Dated:   November 19, 2009
            Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

24